JOHN L. BURRIS, ESQ.    CSB#69888
**LAW OFFICES OF JOHN L. BURRIS**
7677 Oakport Street, Suite 1120
Oakland, California  94621-1939
Tel: (510) 839-5200
Fax: (510) 839-3882
email: John.Burris@JohnBurrisLaw.com

Attorneys for Plaintiff    E-filing
LARAE BROWN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LARAE BROWN,

     Plaintiff,

vs

CITY OF OAKLAND, a municipal
corporation; DEBORAH EDGERLY,
in her official capacity as
the City Administrator for the
CITY OF, and in her personal
capacity; and DOES 1 through 25,
inclusive,

     Defendants.

_____/

No. C08-03972 MEJ ADR

**COMPLAINT FOR DAMAGES
[CIVIL RIGHTS VIOLATIONS;
PENDENT STATE CLAIMS]**

**JURY TRIAL DEMANDED**

## JURISDICTION

    1.  This action arises under Title 42 of the United States Code, Section 1983.  Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343.  Plaintiff requests the Court exercise its jurisdiction over pendent California state law claims pursuant to Title 28 of the United States Code, Section 1367.  The unlawful acts and practices alleged herein occurred in Oakland, California which

**COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS]  1**

1  is within this judicial district.  The parties reside within
2  this judicial district.

PARTIES

4      2.  Plaintiff LARAE BROWN ("BROWN"/"Plaintiff") was, at
5  all times mentioned in, and relevant to, the complaint a
6  citizen of the United States, residing in the City of Richmond,
7  California and employed by defendant CITY OF OAKLAND.

8      3.  Defendant CITY OF OAKLAND ("CITY") is a municipality
9  and local government entity within the County of Alameda and
10 the state of California, and has all of the powers, duties,
11 liabilities and privileges set forth in the California
12 Government Code and is a "person" subject to suit pursuant to
13 42 U.S.C. § 1983 and Monell v. Dept. of Social Services, 436
14 U.S. 658 (1978).

15     4.  Defendant DEBORAH EDGERLY ("EDGERLY") was at all
16 times mentioned herein, and relevant to the claims set forth in
17 this complaint, the City Administrator of the CITY OF OAKLAND.
18 EDGERLY is sued both in her personal and official capacity. As
19 City Administrator, defendant EDGERLY, prior to her termination
20 in July, 2008, had executive and managerial authority for all
21 aspects of CITY's operations and employment practices, and for
22 enforcement of the laws, ordinances, regulations and policies
23 under which CITY operates.  The City Administrator, under the
24 ordinances of CITY is designated the "Appointing Authority" and
25 thereby has the exclusive power to appoint and remove heads of
26 CITY's commissions and departments.  In engaging in the conduct

28  **COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS]**  2

described, EDGERLY acted under the color of law in the course and scope of her employment for CITY and exceeded the authority vested in her under the United States Constitution and as an employee of the CITY OF OAKLAND.

5. Plaintiff does not know the true names and capacities of defendants DOES 1 through 25, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff alleges that each defendant so named is responsible in some manner for the injuries and damages suffered by plaintiff as set forth herein. Plaintiff will amend her complaint to state the true names and/or capacities of defendants DOES 1 through 25, inclusive, when they have been ascertained.

6. At all times herein mentioned, each and every defendant was the agent or employee of their co-defendants, and in doing the things hereinafter alleged, were acting within the course and scope of such agency or employment and with the actual or implied permission, consent, authorization, and approval of their co-defendants.

<u>INTRODUCTION</u>

7. This is a civil rights and personal injury action arising out of plaintiff LaRae Brown's employment by the City of Oakland as its Controller and the circumstances under which she was terminated from her employment. Plaintiff contends her termination was in retaliation for initiating an official inquiry into financial misfeasance and malfeasance by public officials within the CITY generally, and EDGERLY specifically

**COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS]    3**

and an attempt to impede or prevent plaintiff's cooperation with the ensuing investigation.  The conduct of EDGERLY and CITY were violative of plaintiff's rights under the First Amendment of the United States Constitution to speak freely as a citizen on matters of public concern.  EDGERLY's actions were not reviewable or remediable as, by ordinance neither the City Council nor the Mayor are authorized to interfere with action by the City Administrator (EDGERLY) with respect to appointment or removal of officers or employees in administrative service of CITY.

CLAIM REQUIREMENT

8.  A claim pursuant to Government Code §§905, _et seq._ stating the facts and circumstances underlying the causes of action alleged in this complaint was filed with the Office of the Oakland City Attorney on August 31, 2007, within the six month period following plaintiff's termination on March 22, 2007.  The administrative claim was denied on October 2, 2007. Plaintiff complied with all administrative and statutory prerequisites prosecution of this lawsuit.

STATEMENT OF FACTS

9.  Plaintiff hereby incorporates paragraphs 1 through 8 by reference, as though each were repeated and realleged here at length and in full.  Plaintiff's protected speech concerned two areas of malfeasance and unlawful acts by EDGERLY, "fund accounting" and "payroll practices", including nepotism.

**COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS]    4**

## Fund Accounting

10.  Plaintiff BROWN was employed by CITY from July, 2004 as its Controller, within the Finance and Management Agency, and held that position at all times mentioned in this complaint and until her termination on March 22, 2007.  Her duties included oversight and operational responsibility for CITY's accounting and treasury functions, including preparation of reports and schedules pertaining to her responsibilities.

11.  In 2006, BROWN began advising her supervisor at the Finance and Management Agency (Bill Noland), budget personnel, agency heads, and EDGERLY, orally and in written memoranda, that the CITY was not in compliance with city ordinances and/or state law in its payroll and financial practices and reporting and requested that corrective action be taken.  For example, upon her hire, plaintiff found that the CITY's bank accounts had last been reconciled in 1999.  In September, 2006, upon completion of a reconciliation begun in January, 2005, BROWN advised Noland that the CITY's cash balance was overstated by $172 million and that 77 of 111 reconciled Funds had negative cash balances.  Essentially, she determined that the CITY was operating on restricted bond funds, without which there was no money in CITY's General Fund.  BROWN met with Bill Noland, the Treasury Manager as well as CITY's Budget Director to discuss the discrepancies between the investment reports and the amount reported to be in CITY's Cash Accounts because of her concern about violation of the terms governing usage of restricted bond

COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS]   5

funds.  Unauthorized use of these funds violated both state law
and the bond indentures, and constituted fraud and gross waste
of public funds.  She was ultimately told by Noland that he had
taken up her concerns to EDGERLY and that EDGERLY would neither
act to correct the matters reported by BROWN, nor would she
permit the Oakland City Council to be so informed.  The CITY
Budget Director confirmed that the report of EDGERLY's response
to Noland was accurate.

12.    Brown, meeting with Noland and the Budget Director
to discuss the Funds with negative balances, was told that the
that a ten-year repayment plan was being considered.  However,
the "plan" being considered was limited to six Funds which were
overdrawn by $70 <u>million</u>.  An additional <u>77</u> Funds had negative
balances, for which there was no "plan" and of which the City
Council had no awareness.  Budget reports to the Oakland City
Council falsely represented that surplus revenues were being
generated.  Noland confirmed to BROWN that EDGERLY directed and
conducted concealment from the Council, that the Budget Office
was erroneously reporting surplus funds for allocation and that
EDGERLY was unwilling to provide reports representing the true
status of the funds to the City Council.

13.  On March 7, 2007, Brown complained to Noland as the
Director of the Finance and Management Agency, and to CITY's
Budget Director, Jim Smith and backed up her complaints with
written analyses, summaries and conclusions.  At that time,
Brown reported that no action having been taken in response to

**COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS]    6**

her previous complaints, she had taken her complaints to the
City Auditor and would suggest that an outside firm be retained
to investigate and conduct a full audit, reporting findings to
the City Council.  She reiterated that the cash in CITY's bank
account resulted from bond funds deposited in CITY's operating
account and commingled to fund CITY's general business. Noland,
in response to Claimant's statement that the City would not
even make payroll without the bond money, stated EDGERLY was
determined to prevent the issues from surfacing prior to her
retirement.  Budget Director Jim Smith stated that he and each
of his Analysts, Kirby Smith and William Zenoni, reviewed the
cash accounts and were agreement with BROWN's findings and had
gone to EDGERLY themselves.  EDGERLY told them that she would
not address the issue or inform the City Council, and that they
were not to do so.

### Payroll Issues

14.  In a similar vein, BROWN informed Noland and others
of numerous serious payroll abuses:

(1)  Payment of salary at the holiday rate (time and
a half) to Police Department employees _for days not worked_ when
the wrong codes were utilized for their timesheets.   Employees
were also receiving _both_ vacation pay and regular pay for the
same days.  Police employees receiving worker's compensation
were receiving pay for holidays.  The issue arose when BROWN
investigated the  Police Department management's inability to
determine the cause of the budget overages for salaries and

COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS]    7

1  overtime.  BROWN reported her findings to EDGERLY, Chief of

2  Police Wayne Tucker, Noland, and Director of Personnel Resource

3  Management Marcia Meyers, after which she set up a holiday pay

4  code matrix for use by the Police Department to record holiday

5  pay correctly and reviewed a memo Chief Tucker prepared for

6  distribution to police department staff to accomplish that

7  result and to correct the anomalous payments, a substantial sum

8  of money being involved.  She was then informed by Chief Tucker

9  that EDGERLY would not permit the memo to be sent out and would

10  treat the holiday pay issue as a "beneficial past practice" and

11  by not correcting a discriminatory wage practice, was directing

12  a continuing violation of state and federal law and municipal

13  ordinance.

14      (2)  Plaintiff reconciled benefits records for 2004

15  and 2005 and found that 188 employees had worked over 1,000

16  hours in one or both of those years without receiving benefits,

17  a violation of state regulations under PERS, whose audit in

18  March, 2005 showed that 71 employees worked over 1,000 hours in

19  2002 and/or 2003, also without receiving mandated benefits.

20  These unpaid benefits represent an enormous liability and had

21  been reported to EDGERLY to no avail.  EDGERLY has benefitted

22  substantially by the system not being set to ferret out errors

23  in benefits paid.  EDGERLY cashed in all of her sick leave,

24  management leave and vacation leave credits every month and

25  from January 2000 through January 2006 milked the CITY for an

26  additional $183,000 by doing so.  Giving herself Retro(active)

27

28  **COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS]**    8

Pay and bonuses (authorized by herself) totalling approximately $60,000, EDGERLY obtained an additional $240,000 in that time period. No one else in the CITY has ever been allowed, at any time, to fully cash out their benefits in that manner.

(3)  Brown reported the results of her audit of employee hours and found that, between June, 2003 and June, 2005, 954 employees had been paid for time off (vacation, sick leave and holidays) as well as receiving overtime for the same hours, more than 22,000 hours of unearned pay.  Her request to go forward with a plan to recover some or all of those funds was rejected out of hand.

(4) On October 25, 2006 Dory Anna Moreno of the City Attorney's Office recommended that BROWN file a stolen vehicle report with the Police Department for vehicles released to the Auctioneer, were never returned or located and were registered to CITY.  Filing the stolen vehicle reports would limit CITY's liability for injury or damage resulting from the use of those vehicles.  Ms. Moreno had been unsuccessful in her attempts to obtaining EDGERLY's approval.  Brown made similar unsuccessful efforts to gain permission to file the reports and as of the date of her termination no action had been taken.

(5)  EDGERLY also issued bonus checks to herself ($10,000), Noland ($10,000) and Treasury Manager Kitano Kasaine ($5,000) despite being informed by BROWN, when the checks were requested, that the City Council would need to approve giving any bonuses since they were excluded from the Salary Ordinance

COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS]   9

and that the Mayor's approval should be obtained for EDGERLY's
bonus since she was under his authority.  BROWN provided the
section of the California Constitution which forbade any extra
compensation without lawful approval.  Nevertheless, plaintiff
was instructed by EDGERLY and by Noland to process the checks.

(6)  BROWN learned and reported that Edgerly had
relatives on the payroll who were paid despite not showing up
for work.  BROWN then requested that employees, on a one-time
basis, be required to pick up their paychecks in person. The
oversight of payroll was then transferred to Kitano Kasaine,
the Treasury Manager.  Access to the payroll system was taken
from BROWN and her staff, preventing BROWN from investigating
and reconciling anomalies in CITY's payroll accounts.

15.  Brown presented her complaints about payroll abuses,
in writing, to City Auditor Courtney Ruby, in February, 2007,
an elected official empowered to investigate malfeasance, waste
and fraud by Oakland officials and agencies. The City Auditor,
on review of facts presented by BROWN in her complaint retained
an outside auditor to investigate and report.

16.  On March 20, 2007 City Auditor Courtney Ruby notified
BROWN that she had informed Noland of the hiring of an outside
firm to conduct an audit of the payroll.  The City Auditor made
an appointment for Brown to meet with the outside auditor on
March 26, 2007.  On March 22, 2007, four days prior to that
meeting, Noland and EDGERLY, along with staff, had an offsite
budget meeting.  Upon returning, Noland requested BROWN meet

**COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS]** 10

1
2  with him at 5:00 p.m.  When plaintiff met Noland, he told her
3  that EDGERLY wanted out immediately and that she needed to
4  "pack up her things" and hand over her keys and building pass.
5  When Noland retrieved additional packing boxes, BROWN found her
6  computer access had already been terminated.  After BROWN had
7  boxed her personal possessions, Noland escorted Brown from the
8  building.  Noland emphasized that he appreciated and valued
9  BROWN and had no problems with her work but that he worked for
10  EDGERLY and that it was her decision.

11      17.  Plaintiff believes she was terminated in reprisal for
12  her complaint to the City Auditor about EDGERLY's malfeasance,
13  and to prevent BROWN from providing the outside auditor further
14  information in support of an audit of payroll practices and
15  Fund accounting.  EDGERLY, a former Controller and Director of
16  the Finance and Management Agency prior to becoming the City
17  Administrator, sought to avoid informed criticism and possible
18  termination and/or prosecution for her actions constituting
19  malfeasance and fraud, having directed her subordinates to take
20  action which EDGERLY knew violated state and federal law and
21  Oakland municipal ordinances.  EDGERLY directed her subordinate
22  employees and managers to hide CITY's financial circumstances
23  from the Oakland City Council.

24      18.  The matters about which BROWN complained were ongoing
25  violations of law.  Failure to properly pay part-time employees
26  with respect to wages and benefits as alleged above, was found
27  to be violative of state law by a Public Employees Retirement
28  **COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS] 11**

System (PERS) audit and reported to BROWN who informed EDGERLY.
Payment of bonuses to herself, Noland and Kasaine violated both
a CITY ordinance and the California constitutional prohibition
against local governments paying extra compensation to public
officers/employees without lawful authority, Article 11, §10.
Such bonuses were not authorized by the Salary Ordinance and a
request to modify the ordinance to provide such authorization
was rejected by the city council.  The bonuses also violate
Government Code §36506 which authorizes the city council to fix
the compensation for appointed officers as does Article V §501
and chapter 4.04.010 of Title 4 of the Municipal Code which
limits the compensation of the City Administrator and Treasurer
respectively. The City Council declined to authorize bonuses.
Article IX, §907 of the Oakland Municipal Code prohibits the
City Administrator from putting a relative on the payroll.
EDGERLY's placing relatives on the payroll, even if they had
shown up for work, was without authority and unlawful.  Her
concealment of the balances in the fund accounts versus CITY's
general fund was fraudulent to the Mayor and City Council and a
violation of several laws, including Government Code §§36522,
43628 and 50668.3 as well as Article VIII §§803-806 restricting
use of funds.  BROWN submitted documentary evidence, supporting
her disclosures and complaint, to the City Auditor, about these
matters and suffered reprisal for doing so.  Her termination,
and the manner in which it was carried out, was intended to
prevent her cooperation with an official investigation into her

COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS] 12

1

2  complaint.

3

4                                   DAMAGES

5      19.  As a proximate result of the conduct of defendants,

6  Plaintiff suffered severe emotional distress, humiliation and

7  anxiety.  Plaintiff was deprived with her constitutional rights

8  to speak freely, as a private citizen on matters of public

9  concern.  Plaintiff sustained injury to her reputation as a

10  result of EDGERLY's reprisal action, the termination, and by

11  EDGERLY's subsequent statements designed to injure plaintiff in

12  her professional occupation and to discredit plaintiff in an

13  effort to intimidate others who might speak out against EDGERLY

14  on the above-described matters.

15      20.  As a further proximate result of defendants' conduct,

16  Plaintiff claims general damages, including but not limited to:

17  a substantial loss of earnings and other employment benefits

18  which she would have received had defendants not terminated her

19  employment.

20      21.  The conduct of defendants was oppressive, fraudulent

21  and carried out with reckless disregard and indifference to

22  Plaintiff's rights.  Plaintiff is therefore entitled to an

23  award of punitive damages against EDGERLY and other culpable

24  individual defendants.

25      22.  Plaintiff found it necessary to engage the services

26  of private counsel to vindicate her rights under the law.

27  Plaintiff is therefore entitled to an award of all attorney's

28  **COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS]** 13

fees incurred in relation to this action for violation of her civil rights by CITY and/or by EDGERLY individually.

### FIRST CAUSE OF ACTION
Violation of 42 U.S.C. § 1983
(CITY OF OAKLAND)

23.  Plaintiff hereby incorporates paragraphs 1 through 22 above, by reference, as though each were realleged at length and in full.

24.  In doing the acts complained of herein, defendant EDGERLY acted under color of law and as a public official, to cause CITY, a public agency, to deprive plaintiff of certain constitutionally protected rights, including specifically the right to speak freely, as a private citizen, on matters of great public concern, as guaranteed by the First Amendment to the United States Constitution.  The termination of BROWN was intended to, and did, shield the City Administrator, and her coterie, from public exposure, condemnation and consequences of malfeasance and fraudulent conduct by public officials.  CITY's actions, through City Administrator EDGERLY, were intended to, and did, chill the exercise of free speech about CITY's acts and were in direct contravention of the prohibition of the First Amendment.

25. As a proximate result of defendants' wrongful conduct, plaintiff suffered injuries and damages as set forth herein.

WHEREFORE, Plaintiff prays for relief as set forth herein.

COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS] 14

1

2

3

4

### SECOND CAUSE OF ACTION
Violation of California Labor
Code §1102.5(b)(Retaliatory Discharge)
(CITY OF OAKLAND)

5

6

7

26. Plaintiff hereby incorporates paragraphs 1 through 25 above by reference, as though each were realleged at length and in full.

8

9

10

11

12

13

14

15

16

17

27. The conduct of EDGERLY, in her official capacity as the City Administrator and chief operating officer of CITY, a public entity by whom BROWN was employed, was in retaliation for disclosures by BROWN, to the Oakland City Auditor, about actions by EDGERLY that BROWN had reasonable cause to believe were violating state laws and regulations concerning wages and benefits, restrictions on use of public funds, waste and fraud. EDGERLY's actions, imputed to CITY, constitute violation, by CITY, of the "whistleblower" protection laws, Labor Code §§1102.5, et seq.

18

19

20

21

28. The termination of plaintiff by CITY, instituted and implemented by EDGERLY as Oakland City Administrator, violated the public policies reflected in Labor Code §§1102.5 wherein the California Legislature:

22

23

24

25

"finds and declares that it is the public policy of the State of California to encourage employees to notify an appropriate government or law enforcement agency when they have reason to believe their employer is violating laws enacted for the protection of corporate shareholders, investors, employees, and the general public."

26

27

29. The actions of EDGERLY, imputed to CITY by virtue of her position as City Administrator, chief operating officer and

28

**COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS]** 15

Appointing Authority of CITY, violated the public policies that underlie Government Code §§53296, et seq. as the Legislature:

> "finds and declares that state and public employees throughout the state should feel that they have a personal investment in the integrity of the state and the workplace . . . Thus, protection must be provided to public employees who speak out against these practices in the workplace."

30. Plaintiff was terminated in contravention of well-established public policies declared fundamental and beneficial to the public, and embodied in the above-referenced statutes. The termination of plaintiff's employment was also in violation of the fundamental public policies underlying the First Amendment to the United States Constitution, protecting free speech from government intrusion, again, a fundamental policy not personal to her.  Acting as a private citizen whose accusations are matters of public concern, plaintiff had a right to register her complaint against EDGERLY, of her reasonably held belief that EDGERLY's actions violated state law and CITY's ordinances without fear of reprisal.

WHEREFORE, Plaintiff prays judgment against defendants, and each of them, as hereinafter set forth.

THIRD CAUSE OF ACTION
Violation of California Government
Code §§53298, 53298.5 (Reprisal)
(DEBORAH EDGERLY and DOES 1 - 50, inclusive)

31. Plaintiff hereby incorporates paragraphs 1 through 30 above by reference, as though each were realleged at length and in full, with specific reference to paragraph 18.

32. Defendant EDGERLY, was at all times mentioned in this

COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS] 16

complaint, a "manager", Government Code §53296(f); BROWN was an "employee" during said time, Government Code §53296(e).

33. BROWN's written provision of evidence to the Oakland City Auditor, a "local agency", an instrumentality of CITY, Government Code §53296(a) regarding gross mismanagement, a significant waste of funds, and abuse of authority by EDGERLY, was a "disclosure of information" pursuant to Government Code §53296(c).

34. EDGERLY took a "reprisal action", within the meaning of Government Code §53296(j) by ordering summary termination of BROWN's employment, a "disciplinary action" under Government Code §53296(b) as amended by Statutes of 1993, Chapter 503 §1 (SB 194) to punish BROWN's disclosure of information to the Oakland City Auditor and to forestall action on the disclosure.

35. BROWN's delivery of documentary evidence to the City Auditor comprised a written document and "complaint" within the meaning of Government Code §§53296(c) and (d). BROWN, prior to making her complaint, made a good faith effort, in the absence of administrative remedies, to cause action to be taken on the matters set forth in her disclosures to the City Auditor, by requesting the Director of the Finance and Management Agency, the Budget Director and EDGERLY to address those issues. The Oakland City Charter prohibits interference in administrative affairs of CITY by the Mayor, City Council or any other entity of the City of Oakland. Authority over such matters rested entirely with EDGERLY. The 60-day time limit for filing the

**COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS] 17**

"complaint" referenced in Government Code §§53296(c) and (d) 53297(b) and (c) was yet to commence, or had not expired, at the time the complaint was made to the City Auditor.

36. There was, at the time BROWN filed the referenced complaint, no "locally adopted administrative procedure" for doing so.  BROWN therefore filed her complaint with the City Auditor as the agency charged to investigate the claims made in BROWN's disclosure/complaint, and the de facto "governing body" within the scope and purpose of Government Code §53297(c).

37. At the time BROWN filed her complaint, no mechanism was designated by which said complaint could be made "under penalty of perjury" and the City Auditor neither provided a form to BROWN, nor requested an oath by BROWN, prior to taking action on BROWN's complaint by retaining an outside entity to investigate the disclosures within BROWN's complaint.  The investigation and resulting report to the City Auditor would have, if the findings so warranted, led to referral by the City Auditor to the District Attorney or Mayor for prosecution or disciplinary action pursuant to Government Code §53298.5(a).

38. Filing a complaint, both to her agency head and to the City Auditor, about conduct which BROWN reasonably believed constituted violation of state law and municipal policy, is protected activity pursuant to the "whistleblower" protection provisions of the Government Code, as well as under the First Amendment to the Constitution of the United States.  EDGERLY's actions were specifically intended to prevent BROWN from

COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS] 18

cooperating with the audit and investigation of EDGERLY's conduct which constituted fraud and deception with respect to the City Council and the taxpayers of the City of Oakland, misfeasance, malfeasance and corruption, and violation of state law.

39. Prior to her summary termination, BROWN was never counseled or negatively evaluated and Noland, at the time of her termination, told her she had been exemplary in fulfilling her duties.  EDGERLY knew when she determined to terminate BROWN that plaintiff's efforts, as a responsible public official, to have her longstanding complaints investigated or resolved had nearly exhausted BROWN emotionally.  When BROWN complained to Noland that EDGERLY's placing relatives in "no-show" positions on the City payroll violated CITY's nepotism policy, and subsequently confronted EDGERLY, requesting that the CITY be reimbursed for the wages, EDGERLY immediately reassigned the responsibility for payroll from BROWN to the Treasury Manager, one of two persons other than EDGERLY who subsequently received substantial, unauthorized "bonuses".  BROWN brought numerous matters, as described above, for which as Controller she was pressured by city agencies to resolve, some of which indicated violations of state law, to EDGERLY, who refused to authorize remedial action, increasing the stress borne by BROWN.

40. EDGERLY knew, or had reason to know her actions would cause plaintiff to humiliation and financial distress.  The way

COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS] 19

in which BROWN was terminated was oppressive, especially in light of her official position and having been brought to the point of having to complain to the City Auditor.  BROWN to this day has not been given a legitimate reason for her firing, despite a personnel policy requiring that notice be given in writing within 72 hours of termination.  Within days, BROWN learned further that the City Auditor had been ordered to cease all contact with BROWN.

41. EDGERLY's termination of plaintiff was undertaken with malice.  Therefore, EDGERLY is liable personally to the plaintiff for punitive damages, and reasonable attorney's fees incurred in prosecution of this complaint, in addition to plaintiff's general and special damages.

WHEREFORE, Plaintiff prays judgment against defendants, and each of them, as hereinafter set forth.

<u>FOURTH CAUSE OF ACTION</u>
Violation of 42 U.S.C. §1983
(DEBORAH EDGERLY, DOES 1 - 25)

42. Plaintiff hereby incorporates paragraphs 1 through 41 above, by reference, as though each were realleged at length and in full.

43. EDGERLY's actions were taken under color of law and in her personal capacity, in reprisal for BROWN's spoken and written expression regarding EDGERLY on matters important to CITY and those directly affected by the manner in which CITY conducted its affairs in the name of the public.  EDGERLY acted

**COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS]** 20

to prevent investigation of BROWN's complaints and to avoid the consequences of an investigation, which consequences include criminal prosecution, disciplinary action, fines and prevention from holding public office now or in the future.

44.    The aforementioned acts of the defendants were and continue to be willful, wanton, malicious and oppressive and justify the awarding of exemplary and punitive damages in an amount in excess of the jurisdictional minimum of this Court.

WHEREFORE, plaintiff prays for judgment against defendants, and each of them, as hereinafter set forth.

## JURY DEMAND

45.    Plaintiff demands that this matter be tried by a jury.

## PRAYER

Plaintiff prays for relief as follows:

1.    Compensatory damages amounting to five million dollars ($5,000,000);

2.    Punitive damages against DEBORAH EDGERLY and other defendants sued in their personal capacity;

3.    Reasonable attorney's fees;

4.    Penalties and fines pursuant to California Government Code §53298.5;

5.    Costs of suit; and

6.    Such other and further relief as the Court may

COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS] 21

1 | deem just and proper.

2 | Dated: August 19, 2008                    LAW OFFICES OF JOHN L. BURRIS

3 |

4 |                                           By
5 |                                               John L. Burris, Esq.
                                                  Attorney for Plaintiff
6 |                                               LARAE BROWN

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 | COMPLAINT FOR DAMAGES [FEDERAL CIVIL RIGHTS; STATE CLAIMS] 22