IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Mformation Techs., Inc., | NO. C 08-04990 JW |
| Plaintiff, | **OPENING INSTRUCTIONS** |
| v. | |
| Research in Motion Ltd., et al., | |
| Defendants. / | |

### **DUTY OF JURY**

Ladies and gentlemen:  You are now the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you some instructions.  At the end of the trial, I will give you more instructions.  During various points in the trial, when I find it appropriate, I will give you additional instructions.  All of the instructions which I give to you are important.  You must follow all of them.

As I have mentioned to you during jury selection, this is a patent infringement case.  In every legal dispute, there are two kinds of questions: (1) questions of law and (2) questions of fact.  Let me give you examples of questions of law.  I have told you that this is a patent infringement case.  Two questions of law are:

1. What does a claim mean?

2. What must the plaintiff prove in order to recover damages for a defendant's alleged infringement?  In our legal system, the judge is responsible for deciding questions of law.  In what we call "jury instructions" I will tell you the law that

applies to this case. I will give you complete instructions on the law near the end of the case.

As I indicated, the second kind of questions involved in a legal dispute are questions of fact. In other words, what happened? In most lawsuits there is a dispute between the plaintiff and the defendant over whether or not a particular event actually took place, and if it did take place whether or not it caused economic or other types of harm, and if so how much harm was caused. Under our system, a jury is empaneled to listen to the evidence, and based on that evidence, the jury decides whether or not the disputed event took place and the amount of damages, if any, which should be awarded.

## **WHAT A PATENT IS AND HOW ONE IS OBTAINED**

This case involves a dispute relating to a United States patent. Before summarizing the positions of the parties and the legal issues involved in the dispute, I am going to play a video that discusses some of these issues.

To summarize, patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). The process of obtaining a patent is called patent prosecution. A valid United States patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission. A violation of the patent owner's rights is called infringement. The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the

field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art." The examiner also will review prior art if it is submitted to the PTO by the applicant. Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art. However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country. The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art. A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed." This writing from the patent examiner is called an "office action." If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims. This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent. The papers generated during this time of communicating back and forth between the patent examiner and

the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all the information that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

## THE PARTIES, THE PATENT AT ISSUE AND SUMMARY OF CONTENTIONS

In this case, Plaintiff is Mformation Technologies, Inc. Plaintiff is a provider of mobile device management solutions and software. Defendants are Research in Motion Limited, a Canadian Corporation and Research in Motion Corporation, a Delaware Corporation. For ease of reference, I will refer to the Defendants as "RIM." RIM designs, manufactures and sells wireless solutions, including Blackberry wireless communication devices, and associated equipment, software and services.

The patent involved in this case is United States Patent 6,970,917. For convenience, the parties and I will often refer to this patent as the '917 Patent, because "917" is the last three numbers of its patent number. The '917 Patent claims as an invention a "System and Method for Remote Control and Management of Wireless Devices." In the "Summary of the Invention," the inventors disclose that the invention is a "method, system, and computer program product that provides capacity to mange, control, and reconfirm wireless devices remotely over a wireless network. . . ."

In particular, Plaintiff alleges that RIM indirectly infringes Claims 1, 6, 21-25, and 27 (the "Asserted Claims") of the '917 Patent. Plaintiff alleges that RIM induced or

4

contributed to infringement based on its customers' use of certain versions of the BlackBerry Enterprise Server, which we will refer to as "BES" for short. Further, Plaintiff alleges that RIM's infringement is willful.

In response, RIM denies that it infringes any of the Asserted Claims of the '917 Patent. In particular, it denies that any use of its products, including the BES, infringes any of the Asserted Claims; it denies that it has contributed to the infringement of those Claims; and it denies that it has induced any infringement of those Claims. Further, it denies that any alleged infringement is willful. In addition, RIM alleges that the Asserted Claims of the '917 Patent are invalid because it is anticipated by other patents or are obvious. I will give you further instructions as to these defenses.

Your job will be to decide whether the Asserted Claims of the '917 Patent have been infringed and whether those claims are invalid. If you decide that any of the Asserted Claims have been infringed and is not invalid, you will then need to decide any money damages to be awarded to Plaintiff to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

Before you decide whether RIM has infringed the Asserted Claims of the '917 Patent or whether the claims are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation. I will give you those instructions separately.

In a lawsuit such as this, the law provides that a party is entitled to a verdict in its favor only if that party presents a sufficient amount of evidence. We call this the burden of proof. In this case you will hear about "preponderance of the evidence."

When a party has the burden of proving a claim "by a preponderance of the

evidence" that means that the party has to produce evidence which, considered in light of all the facts, leads you to believe that what that party claims is more likely true than not. During the trial, you will hear evidence from both sides. If you were to put the evidence on opposite sides of a scale, the party with the burden to prove a matter by a preponderance of the evidence would have to make the scale tip slightly on that party's side. If that party fails to meet this burden, the verdict must be for the opposing party.

Some of you might have heard the term "proof beyond a reasonable doubt." That is a stricter standard: it only applies to a criminal case, and it requires more proof than a preponderance of the evidence. The reasonable doubt standard does not apply to a civil case and you should therefore put it out of your minds.

## **STANDARD OF PROOF**

In a lawsuit such as this, the law provides that a party is entitled to a verdict in its favor only if that party presents a sufficient amount of evidence under two standards of proof. We call this the burden of proof. The two standards of proof that you will apply to the evidence will depend on the issue you are deciding. On some issues, you must decide whether something is more likely true than not. As I have just explained, this is called "preponderance of the evidence." During the trial, you will hear evidence from both sides. If you were to put the evidence on opposite sides of the scales, the party with the burden to prove a matter by a preponderance of the evidence would have to make the scales tip slightly on that party's side. If that party fails to meet this burden, the verdict must be for the opposing party.                      On other issues you must use a higher standard and decide whether it is highly probable that something is true. This is called "clear and convincing evidence." If you were to put the evidence on opposite sides of the scales, the party with the burden to prove a matter by clear and convincing evidence would have to make the scales tip more than slightly on that party's side.

6

Some of you might have heard the term "proof beyond a reasonable doubt." That is a stricter standard; i.e., it only applies to a criminal case and it requires more proof than a preponderance of the evidence. The reasonable doubt standard does not apply to a civil case and you should therefore put it out of your minds.

Plaintiff will present its evidence on its contention that the Asserted Claims of the '917 Patent has been and continues to be indirectly infringed by RIM and that the indirect infringement has been and continues to be willful. To prove infringement of any claim, Plaintiff must persuade you that it is more likely than not that RIM has infringed that claim. To persuade you that any infringement was willful, Plaintiff must prove that it is highly probable that the infringement was willful.

RIM will present evidence to support its assertion that the Asserted Claims of the '917 Patent are invalid. To prove invalidity of the Asserted Claims, RIM must persuade you that it is highly probable that the claim is invalid.

During the presentation of the evidence, the attorneys will be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show. Such comments are not evidence and are being allowed solely for the purpose of helping you understand the evidence.

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions. In other words, you should keep an open mind throughout the entire trial.

## **WHAT IS EVIDENCE**

The evidence from which you are to decide what the facts are will include: (1) the sworn testimony of witnesses, both on direct and cross-examination, regardless of who calls the witness; (2) the exhibits which will be received into evidence; and (3) any facts to which the lawyers agree or stipulate.

## WHAT IS NOT EVIDENCE

The following things are *not* evidence, and you must not consider them as evidence in deciding the facts of this case:

1. Statements and arguments of the attorneys.
2. Questions and objections of the attorneys.
3. Testimony that I instruct you to disregard.
4. Anything you may see or hear when the court is not in session, even if what you see or hear is done or said by one of the parties or by one of the witnesses.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is indirect evidence, that is, it is proof of one or more facts from which one can find another fact. For example, if the question of fact in a given case is whether or not Johnny ate the cherry pie, testimony by a witness that he saw Johnny put the pie in his mouth and eat it would be direct evidence of this fact. However, if the question of fact in another case was whether Jane ate the cherry pie and in that case no one saw her eat it, but a witness testifies that he walked into the kitchen and saw Jane sitting at the table with the empty pie tin in her hands and cherry pie on her face, this would only be direct evidence that she was in the kitchen and that she had pie on her face, but it would be circumstantial evidence from which a person could find that Jane ate the pie. However, there could be other circumstances which would explain why she had the tin in her hands and pie on her face.

You must listen to all the facts and may draw reasonable conclusions from those facts. Facts may be proved by either direct or circumstantial evidence; you are to consider both types of evidence. The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.

## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer would have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence which I told you to disregard.

## CREDIBILITY OF WITNESSES

In deciding the facts of this case, you may have to decide which witnesses to believe and which witnesses not to believe. You may believe everything a witness says; or only part of it; or none of it.

In deciding what to believe, you may consider a number of factors, including the following:

(1) Is the witness able to see or hear or know the things the witness testifies to?

(2) What is the quality of the witness' memory?

(3) What is the witness' manner while testifying?

(4) Does the witness have an interest in the outcome of the case or any motive, bias, or prejudice?

(5) Is the testimony of the witness contradicted by anything the witness has said or written before trial, or by other evidence?

(6) How reasonable is the witness' testimony when considered in the light of other evidence which you believe?

## **TAKING NOTES**

If you wish, you may take notes to help you remember what witnesses say. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. And do not let note taking distract you so that you do not hear other answers by witnesses. When you leave at night, your notes should be left in the jury room.

If you do not take notes, you should rely upon your own memory of what was said and not be overly influenced by the notes of other jurors.

If you need to speak with me about anything, simply use your note pads to give a note to the clerk of court.

You may also use your notes to let us know if you are having difficulty hearing or understanding a particular part of the case. It is the policy of the Court not to permit jurors to write questions for the witnesses. However, if there is some aspect of the case which you find confusing, please write a note to me and I will bring it to the attention of the attorneys.

Ordinarily we will take a break in the middle of our session. However, if any one of you should need a break before the scheduled time, simply raise your hand to get my attention and ask for a short recess and we will take one. Feel free to stand if you need a stretch. Also, feel free at any time to go over to the water cooler here in the courtroom.

## **CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, do not talk to each other or with anyone else about this case or about anyone who has anything to do with it until the end of the case, when you go to the jury room to decide on your verdict.

"Anyone else" includes members of your family and your friends. You may tell them that you are a juror, but don't tell them anything about the case until after you

have been discharged by me.

"Talking" also includes sending e-mails, posting on message boards or social networking sites (such as Facebook or MySpace), blogging, instant or text messaging, sending messages on Twitter, or making any other form of written communication, whether public or private.

Second, do not let anyone talk to you about the case or about anyone who has anything to do with it.  If someone should try to talk to you, please report it to me immediately.

Third, do not read any news articles about the case or listen to any radio or television reports about the case.

Fourth, do not do any research, such as consulting dictionaries or other reference materials, or performing Internet searches (whether on your computer or cell phone), and do not make any investigation about the case on your own.

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.  Keep an open mind until then.

## **OUTLINE OF TRIAL**

I have ordered the parties to schedule any meeting with me at times other than those reserved for trial.  Sometimes it might be necessary to meet during the times reserved for trial, but if so, I will be doing my best to ensure that the purpose of the meeting is to advance the goal of prompt and efficient proceedings.

At the beginning of the trial each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

Dated: June 19, 2012

JAMES WARE
United States District Chief Judge